# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION AT DAYTON

| | | |
|---|---|---|
| GEORGE SHERRY, | : | Case No. 3:15-cv-00107 |
| Plaintiff, | : | District Judge Walter H. Rice |
| | : | Chief Magistrate Judge Sharon L. Ovington |
| vs. | : | |
| CAROLYN W. COLVIN, COMMISSIONER OF SOCIAL SECURITY, | : | |
| Defendant. | | |

## REPORT AND RECOMMENDATION[1]

## I. Introduction

Plaintiff George Sherry applied for a period of disability and disability insurance benefits on January 19, 2012. He asserted that after working as an engineering technician for almost fifteen years, he could no longer work a substantial paid job as of June 24, 2011 due to chemical sensitivity. His application, medical records, and other evidence proceeded to a hearing before Administrative Law Judge (ALJ) John S. Pope who later issued a written decision. The result of his decision was the denial of Plaintiff's application based on his central conclusion that Plaintiff was not under a "disability" as defined in the Social Security Act. Plaintiff brings the present case challenging ALJ Pope's non-disability decision.

---

[1] Attached is a NOTICE to the parties regarding objections to this Report and Recommendation.

The case is before the Court upon Plaintiff's Statement of Errors (Doc. #7), the Commissioner's Memorandum in Opposition (Doc. #8), Plaintiff's Reply (Doc. #9), the administrative record (Doc. #6), and the record as a whole.

Plaintiff seeks a remand of this case for payment of benefits or, at a minimum, for further proceedings. The Commissioner asks the Court to affirm ALJ Pope's non-disability decision.

## II. Background

### A. Plaintiff

Plaintiff asserts that beginning on June 24, 2011, he has been under a "disability." Plaintiff protectively filed his application for Supplemental Security Benefits on January 19, 2012. He was 57 years old at the time and was therefore considered a person of "advanced age" under Social Security Regulations. He has a high school education. He worked as an engineering technician at Goodrich for approximately fifteen years. Plaintiff's significant health problems include irritative rhinitis, irritative pharyngitis, and pneumonitis due to chemical inhalation.

In April 2011, Plaintiff consulted his family doctor, Dr. McNerney, about burning in his throat and nose, nose bleeds, cough, and chest tightness. (Doc. #6, *PageID* #243). Dr. McNerney's notes indicate that Plaintiff told him that after his chest starts hurting, "he almost gets a panic attack." *Id.* The symptoms were the result of exposure to certain types of industrial lubricants at his place of employment. *Id.* Dr. McNerney prescribed medication and referred him to specialists, Dr. Georges Yacoub and Dr. Randall Welsh. *Id.* at 245.

Plaintiff saw Dr. Welsh, an ear, nose, and throat specialist, in April 2011. (Doc. #6, *PageID* #225). He told Dr. Welsh that his throat and nose have been irritated for over a year as the result of exposure to Skydrol LD-4, a hydraulic fluid used at his work. *Id.* Plaintiff further explained that when he works in a different area, he notices a difference. *Id.* However, when he returns to an area with the chemical, his symptoms return. *Id.* Dr. Welsh noted that Plaintiff had a "good bit of turbinate swelling," a twisted septum, and irritated tissues of his septum. *Id.* at 226. Additionally, Dr. Welsh reviewed the plain films of his sinuses and found that they are normal. *Id.* He diagnosed Plaintiff with irritative rhinitis and irritative pharyngitis. *Id.* Dr. Welsh recommended that he use a nasal douche every day after work to ameliorate the burning symptoms. *Id.*

Dr. Georges Yacoub also evaluated Plaintiff. *Id.* at 258. Plaintiff complained of the following symptoms: chest pain and discomfort with burning like sensation, shortness of breath, cough, and concern of chemical exposure at work. *Id.* Dr. Yacoub noted that "[t]here is no evidence at this time of any permanent lung impairment." *Id.* He assessed Plaintiff was suffering from hyper-reactive airway disease and chemical sensitivity from an inhalation injury. *Id.* His treatment plan included avoidance of any exposure to inhaled irritants and short acting bronchodilators. *Id.*

By August 2011, Plaintiff was no longer working as an engineering technician. (Doc. #7, *PageID* #377). However, despite leaving his employment, Plaintiff testified at the hearing before ALJ Pope that breathing is still painful all the time, and the breathing issue makes him feel like he is "breathing fire." (Doc. #6, *PageID* #75). He further testified when he comes into contact with chemicals, dusts, gases, or fumes, he has both

3

mental and physical agitation. *Id.* at 80. In terms of mental agitation, Plaintiff said that he gets angry and short and cannot concentrate or focus. *Id.* His physical agitation includes burning in his throat, tightening of his chest and lungs, and a nervous/jittery feeling. *Id.* According to Plaintiff, the agitation can last for up to two days. *Id.*

Plaintiff stated that he cannot be around any fumes or chemical smells. *Id.* at 72. He tries to stay away from his family and friends to avoid contact with cologne/perfume and other scents, and only a few friends and his nephews come to his house to see him. *Id.* at 74. Although Plaintiff is a member of the Eagles and Masonic Lodge, he does not go very often. *Id.* Additionally, he explained that he does not shop very often because a lot of stores have scented candles or a chemical smell. *Id.* at 72.

Plaintiff further testified he was previously diagnosed and treated for degenerative disc disease in his lower back. *Id.* at 66. Although he underwent surgery to repair the discs, he still has pain in his hip and left leg if he walks more than four blocks, sits in a desk chair for too long, or stands for too long. *Id.* at 66-67. Plaintiff is not currently being treated for his back or hip problems, but he takes Aleve for pain. *Id.* at 68-69.

During a typical day, Plaintiff testified he sleeps for approximately five hours, wakes up, stares at and/or watches TV for approximately three hours, eats lunch, may garden in the summer for an hour and a half, watches TV for approximately four hours, eats dinner, and watches TV for five hours. *Id.* at 69-71. He tries to walk for exercise but cannot do so if farmers are spraying their fields. *Id.* at 73. He is able to groom and dress himself, make food, and do some chores around his house. *Id.* at 71-73.

Two state agency medical consultants, Dr. Dimitri Teague and Dr. Eli Perencevich, assessed Plaintiff's medical records. (Doc. #7, *PageID* #s 92-98, 100-107). Both found that he "did suffer from respiratory problems as a result of exposure to a chemical." *Id.* at 98, 107. However, they concluded that Plaintiff could perform work that does not require him to work around fumes, odors, dusts, or other environmental hazards. *Id.*

### B. Vocational Expert Testimony

At Plaintiff's hearing before ALJ Pope, Brian Womer, a vocational expert, testified about available jobs in the region. (Doc. #6, *PageID* #s 82-89). In response to a hypothetical question by the ALJ, Mr. Womer testified that that an individual who was 57 to 59 years old with a high school education, has the same past work as the Plaintiff, and was limited to avoiding even moderate exposure to hazards or to chemical fumes would be precluded from his past work. *Id.* at 84. Mr. Womer also stated there are not any transferrable skills to other jobs. *Id.* However, Mr. Womer explained that in the Dayton region, there are many unskilled, entry-level jobs at the medium exertional level. *Id.* There are, for example, 1,800 jobs available as a hand packager, 2,800 jobs available as a machine packager, and 1,400 jobs available as a counter supply worker. *Id.* at 84-85. The jobs available do not require exposure to pulmonary irritants, including dusts, gas, fumes, smoke odors, and poor ventilation. *Id.* at 88. However, the jobs involve working around other individuals. *Id.*

**III.     The "Disability" Requirement and Judicial Review**

The Social Security Administration provides Disability Insurance Benefits (DIB) to individuals who are under a "disability," among other eligibility requirements. *Bowen v. City of New York,* 476 U.S. 467, 470 (1986); *see* 42 U.S.C. § 423(a)(1)(D). The term "disability" – as defined by the Social Security Act – has specialized meaning of limited scope. It encompasses "any medically determinable physical or mental impairment" that precludes an applicant from performing a significant paid job – i.e., "substantial gainful activity," in Social Security lexicon. 42 U.S.C. § 423(d)(1)(A); *see Bowen,* 476 U.S. at 469-70.

Judicial review of an ALJ's non-disability decision proceeds along two lines: "whether the ALJ applied the correct legal standards and whether the findings of the ALJ are supported by substantial evidence." *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009); *see Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 745-46 (6th Cir. 2007). Review for substantial evidence is not driven by whether the Court agrees or disagrees with the ALJ's factual findings or by whether the administrative record contains evidence contrary to those factual findings. *Gentry v. Comm'r of Soc. Sec.*, 741 F.3d 708, 722 (6th Cir. 2014); *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007). Instead, the ALJ's factual findings are upheld if the substantial-evidence standard is met – that is, "if a 'reasonable mind might accept the relevant evidence as adequate to support a conclusion.'" *Blakley*, 581 F.3d at 407 (quoting *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004)). Substantial evidence consists of "more than a

6

scintilla of evidence but less than a preponderance . . . ." *Rogers*, 486 F.3d at 241; *see Gentry*, 741 F.3d at 722.

The other line of judicial inquiry – reviewing the correctness of the ALJ's legal criteria – may result in reversal even when the record contains substantial evidence supporting the ALJ's factual findings. *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009); *see Bowen*, 478 F.3d at 746. "[E]ven if supported by substantial evidence, 'a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.'" *Rabbers*, 582 F.3d at 651 (quoting in part *Bowen*, 478 F.3d at 746, and citing *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 546-47 (6th Cir. 2004)).

## IV. ALJ Pope's Decision

As noted previously, it fell to ALJ Pope to evaluate the evidence connected to Plaintiff's application for benefits. He did so by considering each of the five sequential steps set forth in the Social Security regulations. *See* 20 C.F.R. § 404.1520. He reached the following main conclusions:

| | | |
|---|---|---|
| Step 1: | Plaintiff has not engaged in substantial gainful employment since June 24, 2011. | |
| Step 2: | He has the severe impairments of irritative rhinitis, irritative pharyngitis, and pneumonitis due to chemical inhalation. | |
| Step 3: | He does not have an impairment or combination of impairments that meets or equals the severity of one in the Commissioner's Listing of Impairments, 20 C.F.R. Part 404, Subpart P, Appendix 1. | |

    Step 4:    His residual functional capacity, or the most he could do in a work setting despite his impairments, *see Howard v. Comm of Soc. Sec.*, 276 F.3d 235, 239 (6th Cir. 2002), consisted of a full range of work at all exertional levels but with the following nonexertional limitations: He must avoid even moderate exposure to hazards or chemical fumes.

    Step 4:    He is unable to perform any of his past relevant work.

    Step 5:    He could perform a significant number of jobs that exist in the national economy.

(Doc. #6, *PageID* #s 40-50). These main findings led the ALJ to ultimately conclude that Plaintiff was not under a benefits-qualifying disability. *Id.* at 49.

## V. Discussion

Plaintiff contends that the ALJ's residual functional capacity assessment is not based on substantial evidence because the ALJ erred in relying on Plaintiff's level of daily activities and because the ALJ erred by failing to address that Plaintiff's condition is aggravated by more than one irritant. Plaintiff also argues that the ALJ erred in finding that Plaintiff was not credible. The Commissioner maintains that substantial evidence supports both the ALJ's finding that Plaintiff has no limitations other than needing to avoid even moderate exposure to chemical fumes or hazards and the ALJ's finding that Plaintiff was not fully credible.

### A. Residual Functional Capacity

ALJ Pope found that Plaintiff "has the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations: He must avoid even moderate exposure to hazards or chemical fumes." (Doc. #6, *PageID* #43). In determining Plaintiff's residual functional capacity, the ALJ

8

relied on Dr. McNerney's and Dr. Welsh's treatment notes and opinions, two State agency medical consultants' assessments, part of Plaintiff's testimony, and the record as a whole.

There is substantial evidence in the record to support the ALJ's residual functional capacity finding. The ALJ's finding is most strongly supported by Dr. McNerney's opinion that although Plaintiff's condition required him to avoid exposure to hydraulic fluid, he had no other physical or mental limitations. Dr. McNerney, as his family care physician, treated him at minimum every six months "since at least his alleged onset date." *Id.* at 47, 67. Dr. McNerney's opinions are also supported by the physical findings in his treatment notes. The ALJ accurately observed that "Dr. McNerney's treatment notes reveal normal physical examination aside from expiratory wheezes in both lung fields, which he described as faint with forced expiratory effort." *Id.* at 47. Further, Dr. McNerney's notes indicate that each time Plaintiff discussed sensitivity to chemicals, he related the problems with hydraulic fluid, hydrocarbon vapors, or cold air. *Id.* at 231, 234, 243. Yet, when he was not exposed to those irritants, his symptoms decreased significantly. For example, Plaintiff told Dr. McNerney that when he was away for training for nine days, he did not have "any trouble." *Id.* at 248. It was only when he returned to his usual work that the burning and sneezing started again. *Id.* As the treating doctor, Dr. McNerney's opinion that Plaintiff only needs to avoid exposure to hydraulic fluid strongly supports the ALJ's residual functional capacity finding.

Dr. McNerney's opinions are also supported by Dr. Welsh's physical examination notes. Dr. Welsh completed a physical exam of Plaintiff and found that he had turbinate

swelling in his nose, a twisted septum, and irritated tissue in his the septum, and he had clear postnasal drainage. *Id.* at 226. Other than those issues, Dr. Welsh's notes indicate a normal physical examination similar to Dr. McNerney's notes. Specifically, Dr. Welsh found that his head and face had a normal overall appearance with no palpable sinus tenderness, his nasopharynx, base of tongue, epiglottis, pyriform sinuses, postcricoid area, and true vocal cords were normal, his palpation of the neck, lymphatic chain, and thyroid were within normal limits, and his respiratory effort was normal. *Id.* Similarly to what Plaintiff told Dr. McNerney, he told Dr. Welsh that when he worked in a different area with less exposure to Skydrol, he noticed a difference. *Id.* at 225. Additionally, he told Dr. Welsh that he felt "pretty good" on weekends when he was not working. *Id.* Dr. Welsh diagnosed Plaintiff with irritative rhinitis and irritative pharyngitis. *Id.*at 226. Dr. Welsh advised Plaintiff to use a nasal douche after work and advised him that it would be best if he wore a mask or protective gear at work. *Id.*

The assessments from two State agency medical consultants also support the ALJ's residual functional capacity findings. Under Ruling 96-6P, an ALJ is required to consider and evaluate an assessment of the individual's residual function capacity by a State agency medical consultant. SSR 96-6p, 1996 WL 374180 (July 2, 1996). The ALJ correctly observed that the consultants are expert medical personnel, and they are "well-versed in the assessment of functionality as it pertains to disability provisions of the Social Security Act, as amended." (Doc. #6, *PageID* #48). Additionally, their assessments are consistent with Dr. McNerney's opinion and additional medical evidence in the record. *Id.* at 48. Finally, both doctors reviewed the record and determined

10

independently that Plaintiff had no exertional limitations and only needed to avoid even moderate exposure to fumes, odors, dusts, gases, poor ventilation, etc. *Id.* at 96, 107. The fact that the two consultants reviewed Plaintiff's records and reached the same conclusion adds to the weight of their opinions.

The ALJ also evaluated Plaintiff's credibility to determine the weight of his testimony and its impact on his residual functional capacity. The ALJ's finding that the Plaintiff was not entirely credible is supported by substantial evidence.

Dr. McNerney's and Dr. Welsh's treatment notes and opinions, two State agency medical consultants' assessments, part of Plaintiff's testimony, and the record as a whole support the ALJ's residual functional capacity findings. Accordingly, Plaintiff's challenge to the ALJ's residual functional capacity findings lacks merit.

### B. Credibility of Plaintiff

In considering Plaintiff's testimony, the ALJ evaluated his credibility and found that his statements regarding the limiting effects of his symptoms were not entirely credible. (Doc. #6, *PageID* #45). "[A]n ALJ's credibility determination about the claimant are to be given great weight, 'particularly since the ALJ is charged with observing the claimant's demeanor and credibility.'" *Cruse v. Comm'r of Soc. Sec.,* 502 F.3d 532, 542 (6th Cir. 2007) citing *Jones v. Comm'r of Soc. Sec.,* 336 F.3d 469, 475. In the present case, the ALJ explained he did not find all Plaintiff's statements to be credible because his statements regarding the extent of his symptoms were not supported by the record. (Doc. #6, *PageID* #45). Substantial evidence supports the ALJ's assessment of

Plaintiff's credibility, including his treating doctors' notes and opinions, opinions of State agency medical consultants, and Plaintiff's own statements to his doctors.[2]

Plaintiff argues that he cannot tolerate the cologne/perfume of coworkers or sprayed scents. (Doc. #7, *PageID* #382). However, the ALJ correctly observed that there is no medical evidence that supports his allegation. (Doc. #6, *PageID* #47). In fact, Plaintiff's treating physician, Dr. McNerney, determined his condition was caused by exposure to one chemical. *Id.* at 229. Further, Dr. McNerney's notes indicate he only complained of issues related to breathing industrial lubricant products (hydraulic fluid), hydrocarbon vapor, and cold air. *Id.* at 231, 234, 243. Despite the record only supporting restricting Plaintiff's exposure to hydraulic fluid, the ALJ found him more limited by finding his residual functional capacity to exclude exposure to all hazards and chemical fumes. *Id.* at 43.

Plaintiff also stated he experiences pain on a small scale every day. *Id.* at 76. However, Dr. McNerney's notes from December 29, 2011 and June 28, 2012 indicate Plaintiff had "no associated chest pain or shortness of breath." *Id.* at 240, 269. Further, as the Commissioner emphasizes, "Dr. McNerney never found any musculoskeletal, neurological, cardiac, or circulatory deficits and he never found any respiratory distress or abnormal respiratory effort (Doc. #8, *PageID* #394) (citing *PageID* #s 232, 235, 242,

---

[2] The First Certified Administrative Record also contains records from Dr. Patrick Allan, M.D. (Doc. #6, *PageID* #s 378-379). That evidence was not before the ALJ. Rather, Plaintiff submitted it to the Appeals Council. However, since the Appeals Council denied Plaintiff's request for review, that evidence is not a part of the record for purposes of substantial evidence review of the ALJ's decision. *Cline v. Comm'r of Soc. Sec.,* 96 F.3d 146, 148 (6th Cir.1996) (citation omitted). Review of the Commissioner's decision is limited to the record made before the ALJ. *Bass v. McMahon,* 499 F.3d 506, 512–13 (6th Cir.2007).

244, 249, 251, 253, 270, 313-314, 318).  Plaintiff also told both Dr. McNerney and Dr. Welsh that when he was away from the hydraulic fluid, he felt better until he returned to areas where it was present.  (Doc. #6, *PageID* #s 225, 248).

      Finally, Plaintiff testified he is only able to lift ten to fifteen pounds, walk for two hours, stand for one hour, and sit in a chair for two hours.  *Id.* at 77-79.  The ALJ accurately states that there is no support for those statements.  *Id.* at 47.  For example, Dr. McNerney's and Dr. Welsh's notes do not indicate that Plaintiff ever mentioned that he was limited to that extent.  Additionally, the ALJ found that Plaintiff "has described daily activities that are not limited to the extent one would expect given the complaints of disabling symptoms and limitations.  *Id.*  Plaintiff contends that the ALJ erred by relying exclusively on Plaintiff's daily activities.  (Doc. #7, *PageID* #381).  However, this argument lacks merit.  While the ALJ considered Plaintiff's daily activities, the ALJ also emphasized that Dr. McNerney specified Plaintiff "has no exertional limitations" and "no physical or mental limitations."  (Doc. #6, *PageID* #s 47-48, 230).

      Plaintiff also argues that the ALJ erred by failing to address that Plaintiff's condition may be aggravated by more than just one specific irritant.  This contention lacks merit.  The ALJ specifically determined that although his treating physician limited the cause of his problems to Skydrol, he must avoid even moderate exposure to hazards or chemical fumes.  *Id.* at 43.  Similarly, when the ALJ questioned Mr. Womer, the vocational expert, the ALJ asked about available positions that avoided even moderate exposure to hazards or chemical fumes.  *Id.* at 84.  The ALJ's use of plural "hazards" and "fumes" demonstrates that the ALJ addressed that Plaintiff's condition may be

aggravated by more than one irritant.  Therefore, the ALJ did not err by failing to address that his condition may be aggravated by more than one irritant.

Accordingly, Plaintiff's challenges to the ALJ's decision lack merit.

## IT IS THEREFORE RECOMMENDED THAT:

1. The ALJ's non-disability decision be affirmed; and

2. The case be terminated on the Court's docket.

Date:  May 12, 2016             *s/Sharon L. Ovington*
                                Sharon L. Ovington
                                Chief United States Magistrate Judge

## NOTICE REGARDING OBJECTIONS

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within **FOURTEEN** days after being served with this Report and Recommendations.  Pursuant to Fed. R. Civ. P. 6(d), this period is extended to **SEVENTEEN** days if this Report is being served by one of the methods of service listed in Fed. R. Civ. P. 5(b)(2)(C), (D), (E), or (F).  Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections.  If the Report and Recommendation is based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs.  A party may respond to another party's objections within **FOURTEEN** days after being served with a copy thereof.

Failure to make objections in accordance with this procedure may forfeit rights on appeal.  *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947, 949-50 (6th Cir. 1981).